

2015 JUL -6 AM 10: 3

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,     )
                  )   No. 71408-2-I
       Respondent,   )
                  )   DIVISION ONE
   v.             )
                  )
LELAND DULANI HARRIS,   )   UNPUBLISHED OPINION
                  )
       Appellant.    )   FILED: July 6, 2015

SPEARMAN, C.J. — Pursuant to plea negotiations, Leland Dulani Harris waived his right to a jury trial and entered an Alford[1] plea of guilty to the charge of attempted murder in the second degree, while armed with a deadly weapon, and to the aggravating factor that the crime involved domestic violence and occurred within sight or sound of his minor children. The sentencing court imposed an exceptional sentence above the standard range. Harris appeals, contending that the exceptional sentence violated his rights under the Sixth Amendment of the United States Constitution and the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. Finding no error, we affirm.

## FACTS

In early 2013, Leland Harris and Carmen Young had been in a dating relationship in New Jersey for about six years and had two children together,

---

[1] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d. 162 (1970).

ages five and three. The relationship was marred by domestic violence and eventually Harris was incarcerated. While he was serving his sentence, Young moved to Washington. After Harris's release from custody, Young allowed him to come to Washington to visit her and the children for a week. At the end of the week, Harris refused to leave, but he eventually agreed to do so and Young bought him a return ticket to New Jersey.

The day before Harris was scheduled to leave, Young returned home from work to find him drinking outside her apartment building. Harris followed Young into her apartment and they sat quietly on the sofa for a while. Suddenly, Harris grabbed her by the hair and said "Bitch, I'm not going to let you take my kids from me." Clerk's Papers (CP) at 7. He then dragged her into the kitchen by her hair. Harris pulled a knife from the kitchen drawer and dragged Young to the bedroom. The younger child came running into the bedroom and as Young "was holding her, telling her to calm down and stop crying and go in her room ... [t]hat's when he stabbed [her] the first time, when I was holding H.H. . . . . He stabbed me on my left side and said 'I'm going to kill you bitch.'" Id. Their older child started to enter the bedroom and Young told the two to leave. Harris kicked both children out of the room and closed the door. He then stabbed Young again, this time in the chest, before fleeing with Young's cell phone.

A neighbor found Young bleeding profusely and called the police. When the police arrived, they found the children shaking and distraught. As Young explained that she had been stabbed by Harris, Harris returned to the scene and confessed to the crime. He was placed under arrest. Young was taken to

2

No. 71408-2-I/3

Harborview Medical Center and treated for injuries to her kidney, spleen pancreas and lung.

Harris was charged with attempted murder in the second degree– domestic violence, while armed with a deadly weapon and an aggravating factor that the crime involved domestic violence and occurred within sight or sound of his minor children. He was also charged with two counts of fourth degree assault–domestic violence. Pursuant to plea negotiations, the State agreed to dismiss the fourth degree assault charges and Harris agreed to plead guilty to the remaining allegations by way of an Alford plea. In the statement of defendant on plea of guilty he stated:

> I plead guilty to the crime(s) of [a]ttempted murder 2 with domestic violence allegation under RCW 10.99.020; an aggravating factor under RCW 9.94A.535(3)(h)(ii) of the crime involving domestic violence and being committed in the presence of the victim or offender's minor children and a special allegation of being armed with a deadly weapon, to wit: a knife (sic) as charged in the information, including all charged enhancements and domestic violence designations.

CP at 22. In addition, the form asks Harris to "state briefly in [his] own words what [he] did that makes [him] guilty of this (these) crime(s), including enhancements and domestic violence relationships, if they apply[,] . . ." Harris stated:

> This is an Alford Plea. I wish to plead guilty without having to admit that I committed the acts. I have reviewed the police reports in this case and believe that there is a substantial probability that I would be convicted if this matter went to trial. The court can review the certification of probable cause to determine that there is a factual basis for this plea.

CP at 22.

3

Harris also stipulated that "[f]or purposes of the plea ... the knife used was 3 inches or longer."[2] Id.

The trial court reviewed the certification of probable cause and found a factual basis for the plea. The court accepted Harris's guilty plea after determining that it was knowingly, intelligently and voluntarily made.[3] Id. At the conclusion of the hearing Harris refused to sign the State's felony "plea agreement." Harris acknowledged that in exchange for his plea of guilty the State agreed to dismiss the assault charges as to the children. But he contended there was no plea agreement and that he "was just pleading to the mercy of the court, though, and to the judge's discretion." VRP at 48. Although the "plea agreement" is not part of the record on appeal, the parties appear to agree that it contained language which would have expressly permitted the court to consider the certification for determination of probable cause for sentencing purposes.

The standard range for Harris's charges, based on the seriousness level and his offender score, including the twenty-four month deadly weapon enhancement, was 124.5-199.5 months. But the court imposed an exceptional

---

[2]Harris's stipulation to the knife having a blade longer than three inches was necessary because the certification of probable cause did not specify the length of the knife, and thus, could not by itself establish a factual basis for the court to find that the knife qualified as a deadly weapon under RCW 9.94A.825. The finding required the court to add twenty-four months to Harris's standard range under RCW 9.94A.533(4)(a).

[3] During an extensive colloquy at the guilty plea hearing, the court specifically asked Harris several times whether he was pleading guilty to the "aggravating factor of the crime involving domestic violence, and being committed in the presence of the victim or offender's minor children. . . ." Verbatim Record of Proceedings (VRP) at 58. (See also VRP at 25, 61, 67, 68.) After the court answered several of Harris's questions and allowed him opportunities to speak privately with his attorney, he answered "I plead guilty." VRP at 68. He also acknowledged that he was "giving up [his] rights to trial, giving up [his] rights to fight the charges, understanding all the consequences" and agreed the court could "review the Certification of Probable Cause to determine that there is a factual basis for this plea." VRP at 61, 66.

sentence of 216 months, finding that "[t]he crime was committed in the presence of the victim and defendant's minor children." CP at 41. The finding was based "solely on the fact that there was a plea to an aggravating factor. . . ." VRP at 132. Harris appeals.

DISCUSSION

Harris contends the trial court was without authority to impose an exceptional sentence. He claims he is entitled to a jury trial on the aggravating factor because he did not stipulate to the facts relied upon by the judge to impose the exceptional sentence. The State argues that Harris pled guilty as charged, including to the aggravating factor. By pleading guilty, the State claims that Harris established the aggravating factor as a matter of law, despite his Alford plea and refusal to sign the felony plea agreement.

We review de novo whether a court was authorized to impose an exceptional sentence. State v. Hughes, 154 Wn.2d 118, 132, 110 P.3d 192 (2005), abrogated on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006).

Under the SRA, a sentencing court may impose an exceptional sentence "if it finds ... that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. The statute sets forth a number of factors that would support an aggravated sentence. RCW 9.94A.535(2). RCW 9.94A.537(3) states that "[t]he facts supporting aggravating circumstances shall be proved to a jury beyond a reasonable doubt. The jury's verdict on the aggravating factor must be unanimous, and by special interrogatory. If a jury is

5

waived, proof shall be to the court beyond a reasonable doubt, unless the defendant stipulates to the aggravating facts."

The Sixth Amendment requires that any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The relevant "statutory maximum" is the maximum sentence a judge may impose on the basis of facts reflected in the jury verdict or admitted by the defendant. Blakely v. Washington, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Nothing, however prevents a defendant from waiving his Apprendi rights. Id. at 310. "When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty." Id. (internal citations omitted).

Harris argues that the trial court violated Blakely and the SRA because it imposed an exceptional sentence in reliance on facts that were not found by a jury or a court beyond a reasonable doubt and not stipulated to by Harris. But the record shows that as part of his Alford plea of guilty to the underlying crime and the aggravating factor, Harris stipulated that the court could consider the certificate for determination of probable cause to find a factual basis for both pleas. Harris does not dispute that based on that stipulation and the finding of a factual basis for the plea to the underlying crime that he is guilty of that crime as

a matter of law or that the court may constitutionally sentence him for that crime. But he argues these same principles do not apply to his Alford plea of guilty to the aggravating factor. The argument is unconvincing because Harris does not explain why his plea of guilty to the aggravating factor should be treated differently than his plea of guilty to the underlying crime.

Harris's reliance on State v. Suleiman, 158 Wn.2d 280, 143 P.3d 795 (2006), is misplaced. In that case, the defendant was charged with three counts of vehicular assault. The victims were passengers in the car Suleiman was driving. Suleiman entered an Alford plea of guilty to the charges. The State indicated that at sentencing it would seek an exceptional sentence on the ground that Suleiman knew or should have known that one of the victims, K.D., was particularly vulnerable. Suleiman stipulated that the facts set forth in the certification for determination of probable cause and the prosecutor's summary were real and material facts for sentencing purposes. However, he did not agree that those facts formed a legal basis for an exceptional sentence.

The stipulated documents established that as Suleiman was driving aggressively and at excessive speeds, the passengers yelled at him to slow down and stop so they could get out. Suleiman ignored their pleas and told them to shut up. He eventually lost control of the car and crashed into an embankment, causing serious injuries to the passengers, including K.D. who was paralyzed from the neck down. The sentencing court determined that K.D. was particularly vulnerable and the defendant knew or should have known of that vulnerability

and imposed an exceptional sentence of twenty-eight months beyond the high end of the standard range.[4]

On appeal, the Washington Supreme Court agreed with Suleiman and found that the real and material facts to which he had stipulated were insufficient by themselves to establish a factual basis for the conclusion that the victim was particularly vulnerable. The court stated:

> While the documents imply that Suleiman knew or should have known that [K.D.] was particularly vulnerable, they do not say so specifically, nor do they state that vulnerability was a substantial factor in the crime. In addition, Suleiman did not stipulate that the record supported a finding that [K.D.] was a particularly vulnerable victim. Even assuming Suleiman's stipulation is valid, the trial court still had to make these factual conclusions to support an exceptional sentence based on victim vulnerability. Because these factual conclusions were not part of the stipulation and they were not found by a jury beyond a reasonable doubt, we conclude that Suleiman's exceptional sentence violates Blakely.

Id. at 293. Thus, the error in Suleiman was that the sentencing court had to find facts beyond those set forth in the stipulated documents in order to establish the aggravating factor and Suleiman had neither agreed to those facts nor waived his right to have a jury determine their existence.

In this case, however, Harris pleaded guilty to the aggravating factor and agreed that the court could determine whether the facts set out in the certification for determination of probable cause were sufficient to establish that he had committed a crime of domestic violence within sight and sound of his minor

---

[4] The sentencing court also found two other aggravating factors, but the Court of Appeals affirmed only on the ground of the victim's particular vulnerability and the State relied solely on that ground before the Supreme Court.

8

children. The court did so and concluded the facts were sufficient. Unlike in Suleiman, here, the court did not have to rely on inferences or implications beyond those explicitly stated in the certification to find the requisite factual basis for the aggravating factor. The certification clearly established that the crime was one of domestic violence ("Leland Dulani Harris (07-22-75) and Carmen Rae Young (10-29-84) have had a 6 year dating relationship and two children in common; 5 year old R.H. and 3 year old H.H." CP at 5) and that it was committed within sight and sound of his minor children ("So I was holding [H.H.], telling her to calm down and stop crying and go in her room. . . .That's when he stabbed me the first time, when I was holding H.H. ... He stabbed me on my left side and said 'I'm going to kill you bitch.'... R.H. was about to start coming out too and he kicked R.H. back and closed the door." CP at 7)

Harris also points out that he refused to sign a document summarizing his plea agreement with the State that expressly permitted the court to consider the certification for determination of probable cause for sentencing purposes. He argues that as a result, the court was prohibited from relying on that document to find facts supporting the aggravating factor. But it is clear from the record that the court did not rely on the certification as a basis for imposing the exceptional sentence. The court noted it was "clear" that Harris "pled to the aggravating factor and he waived his right to a jury trial to find the aggravating factor." VRP at 131. The court then stated that its decision to impose an exceptional sentence was based "solely on the fact that there was a plea to an aggravating factor...." VRP at 132.

9

Harris does not contest his plea of guilty to the aggravating factor. He appears to argue only that his failure to sign the State's document summarizing the plea agreement somehow negates his express agreement to permit the court to review the certification to determine if it contained facts sufficient to support his plea of guilty to the aggravating factor. The argument is untenable and we reject it.

Because Harris pleaded guilty to the aggravating factor and consented to judicial determination of whether the facts set for in the certification for determination of probable cause were sufficient to establish the aggravating factor and because those facts, without the necessity of additional judicial fact-finding, support the trial court's conclusion that the aggravating factor was present, we affirm the exceptional sentence imposed in this case.[5]

Affirmed.

_Specimen, C.J._

WE CONCUR:

_____          _____

---

[5]Harris also claims that he received ineffective assistance of counsel at trial because his attorney agreed or acquiesced to the exceptional sentence. Because we find that the trial court did not err, we decline to review the issue of ineffective assistance of counsel.